(Judge Laubie sitting in place of Judge Hale.)

### JULIUS STRASSER v. UNION CLUB OF CLEVELAND.

1. EMPLOYEE WITH KNOWLEDGE CANNOT CHARGE NEGLIGENCE.

A porter employed in a club house for several years and familiar with the surroundings, cannot in an action against the club for personal injuries from falling down an elevator shaft, charge it with negligence in failing to light a passage-way to the shaft, or to provide appliances to keep persons from entering the shaft, when the elevator was not there, or in the want of any rule as to the operation of the elevator, or of signals to indicate when the elevator was removed, when these facts were known to him at the time of his injuries.

2. RULES HABITUALLY BROKEN—EVIDENCE.

Where such case was tried by plaintiff on the theory that the rules of the club forbidding its employees to ride on an elevator were habitually violated with the knowledge of the club, it is not prejudicial error to permit an employee to testify that the managers of the club had told him not to allow the men to ride thereon.

3. SAME.

In such action it was error to refuse to permit plaintiff to testify that it was his practice to ride up and down on the elevator sometimes when loaded and sometimes when empty, to the knowledge of his foreman, and that the rule forbidding riding on the elevator was habitually broken.

4. SAME—ERRONEOUS INSTRUCTION.

A refusal to charge in such action, that if the jury should find that defendant could have avoided injuring plaintiff, he could recover, though negligent, was proper.

5. SAME—PROXIMATE CAUSE.

If, in such case, plaintiff's negligence contributed to his injury, which would not have happened except for defendant's negligence, such contributory negligence will not defeat the action unless it was the proximate cause of the injury.

6. COURT MAY REFUSE TO SUBMIT QUESTIONS—SEC. 5201, REV. STAT.

The particular questions of fact contemplated by Sec. 5201, Rev. Stat., requiring the court, upon request of either party, to submit questions to the jury, for special findings, are such that the answers to them will establish ultimate and determinative facts, and not those which are only of a probative character. Therefore, where the questions are not such as will enable the court, in the application of the law, to determine the rights of the parties, and are those which simply tend to prove them, the court may refuse to submit them.

HEARD ON ERROR.

*Preusser & Wenneman*, for plaintiff in error.

*Wilcox, Collister, Hogan & Parmely*, for defendant in error.

MARVIN, J.

The case of Julius Strasser against the the Union Club of Cleveland.

Suit was brought by Strasser in the court of common pleas against the Union Club, which is a corporation, for the purpose of recovering damages for personal injury which Strasser sustained on December 27,

1897, while he was an employee of the club. The facts, which are undisputed, are, that for some four or five years Strasser had been employed as a porter and to do other work about the club house of the Union Club ; a part of his duties were to carry supplies from the basement to the second and third floors of the club building ; those supplies usually were carried on an elevator or dumb-waiter, being placed upon the dumb waiter or elevator in the basement and carried up to the second floor, if they belonged on that floor ; the dining-room is on that floor ; or carried to the third floor, if the supplies belonged there; the kitchen is on the third floor. Among other things, it was his duty to carry coal to the kitchen.

The immediate superior of Strasser was a second steward of the club, Henry Grimm.

This elevator was not an ordinary passenger elevator at all; it has a platform, indeed, it is but a platform and comes up through a shaft; there are no doors or gates provided to protect those who may be upon the floors where there are openings into the elevator shaft. On the second floor of the club house the passage-way from the pantry to the elevator is only four or four and a half feet high, very narrow and very dark.

This accident happened at about eight o'clock in the evening, December 29. Strasser and Grimm, the second steward, were in the basement. They placed upon the elevator some coal which was to go to the third story, and several cases of wine which were to be taken off at the second story. Then Grimm, the second steward, went to the third story, walking up the stairs ; the plaintiff remained in the basement, and the two, the plaintiff in the basement and Grimm on the third floor, pulled on the ropes or cords by which the elevator was caused to rise ; these goods were on the elevator. They drew the elevator up so that the platform was about two feet below the second-story floor of the building. The reason it was not drawn up to the level was because the passage-way to the pantry in which these wines were to be placed, was low, and the goods were piled up to a considerable height or more than four and a half feet, in order that they might reach the goods and not have them interfered with by overhead ceiling or wall. They left the elevator some two feet below the level of the floor. Then the top of the goods was not higher than the ceiling of this passage-way, where they were to take them out. Having removed the wines at the second floor, and the plaintiff and Grimm both took part in the removal of these wines, and Strasser, the plaintiff, placed them in some order in the pantry which was some seven or eight feet back from where the opening from the passage-way was, into the elevator shaft, the coal remained upon the platform of the elevator after they had the wines removed. Strasser having completed his work of placing the wines in order in the pantry, went backward along this passage-way, and he had to bend over to do it, the passage-way being only four or four and a half feet high and it deing dark. He went back to the elevator shaft, reached out with his foot to find the platform which had been left by himself and Grimm some two feet lower, lost his balance and fell over into the elevator shaft. As a matter of fact, that elevator had been, by Grimm, run to the third floor, so that there was nothing to stop the fall of Strasser until he struck the basement floor some thirty feet below; and he was injured.

Strasser v. Union Club.

The petition sets out the dark condition of the passage-way leading from the pantry to the elevator shaft, the want of light and the like, and then concludes by saying that the negligence of the defendant consisted in not providing said elevator with gates or doors or other appliances, which, working either automatically or by hand, would shut off access to the elevator shaft when the elevator had left the second floor; and in not providing said elevator shaft or said hall-way, leading to the elevator shaft on the second floor, with a light to illumine the said shaft or hall-way at night; and in not providing said elevator with a bell, signal, or other appliance to be used to indicate that the elevator was removed or was being removed from the second floor; and in not adopting a rule requiring the person operating or setting the said elevator in motion, to give a signal or warning thereof; and in moving said elevator from the second floor to the third floor without notifying or warning the plaintiff that said elevator had been or was being moved from where he had left it at rest.

The answer avers that so far as the darkness of this passage-way or hall-way was concerned, the failure to provide any gates or doors or other appliance to keep people from going into the elevator shaft when there was no platform there, and the want of any rule as to the operation of the elevator, and the want of signals to indicate when the elevator was removed, were all well known to this plaintiff who had been in the employ of the club for four or five years.

No reply is filed to that, and no claim was made on the trial that this was not true.

It is complained of on the part of the plaintiff here who was the plaintiff below, that the court erred in a statement or a ruling, made at the very outset of the trial. A witness, John Kerg, was placed on the stand by the plaintiff, and this question was put to him, "State your name." And thereupon the defendant objected to the introduction of any evidence under the petition. The court overruled that objection, holding that the petition states a cause of action, but that the only charge of negligence contained in the petition was the moving of the elevator from the second floor to the third floor by the second steward, without notification or warning the plaintiff that the elevator had been or was moving from where the plaintiff had left it at rest.

It is said that the court erred in this. Whether this question is so raised that if there were an error, it could be taken advantage of, it is not necessary to say. It seems that the proper thing would have been to have asked some questions and got some rulings. We think, however, the court stated the only issue the plaintiff could make under these pleadings.

We think the only issue that was to be tried, so far as any negligence on the part of the defendant was concerned, was whether it was negligent in removing that elevator without notifying the plaintiff. The evidence established that a notice was posted on the elevator, or at the sides, where it could be seen plainly, and in these words: "All persons forbidden to ride on this elevator."

Grimm, the second steward, who was the immediate superior of the plaintiff, and who was put upon the stand by the plaintiff, testified that he had himself ridden with the plaintiff and he had seen the plaintiff alone ride *down* on the elevator after the notice was posted.

The purpose on the part of the plaintiff was to show that notwithstanding such notice was posted, it was habitually violated to the knowledge of the defendant or its foreman.

The question was asked of Grimm, as appears on the thirty-fifth page of the bills of exceptions, whether there was any instruction not to ride on that elevator other than that that was pasted or tacked on the elevator itself. The witness testified in reply, that he did not remember that he had ever communicated to the plaintiff any instructions that he should not ride on the elevator. Then he was permitted to answer a question as to what orders, if any, he had ever had from the managers of the club not to allow anybody to ride on the elevator, and the question was objected to ; he was permitted to answer, that the managers of the club had told him he must not let the men ride there. That was answered over the objection of the plaintiff, but on the theory that the plaintiff was trying this case; that, notwithstanding there was a notice forbidding riding in this elevator, still it was habitually violated with the knowledge of the club, it is not clear that any error to the prejudice of the plaintiff resulted from that ruling.

Later, the plaintiff himself was upon the stand. It should be said that the second steward, Grimm, while upon the stand, testified that notwithstanding he had seen Strasser ride down on the elevator after that notice was put up, and had himself ridden *down* with him, that he had not seen him ride *up* on the elevator; and there was evidence as to the relative weight of the elevator and the counter-weight, affecting the question whether a man might ride up better than down.

Then Strasser was himself upon the stand, and this question was asked : "What was your practice during all the time that you were employed there with regard to riding up or down on the elevator?" To this question, objection was made; that objection was sustained ; an exception was taken ; and the plaintiff's counsel stated that he expected to show that it was customary for the plaintiff to ride *up and down* on the elevator sometimes, when loaded and sometimes when empty, and that his foreman knew of it. It seems to us that the court should have permitted that question to be answered.

One of the defenses upon which the club was relying in this case, was that Strasser was negligent; that he was negligent in that he violated a rule of the club. His claim was that they did not have any rule that anybody was bound by ; and, of course, the theory was, that since the coal was to be carried *up*, not *down*, the theory, the claim on the part of the plaintiff was, that Grimm, the foreman, should have understood that, when that wine was properly taken care of on the second floor, the plaintiff would ride up to the third floor with the coal.

Indeed, counsel for the defendant below, and the court, seemed to recognize that it was an issue as to whether there was a rule which would forbid Strasser from riding upon this elevator, and one that was adhered to or was so often disregarded, so habitually disregarded, that he was not bound by it. Perhaps I ought not to have said that the counsel for the defendant recognized that counsel for the defendant requested this charge to be given ; with a qualification, it was given. The request was made by the defendant.

"It appearing in the evidence that it was not necessary for the plaintiff, in carrying out the order he claims to have received from Grimm, to get upon the elevator, and that it was not his custom or that of the other employes to get upon the elevator while hoisting goods thereon,

no negligence is to be attributed to Grimm in moving the elevator from the second to the third floor notwithstanding the orders which he had previously given to the plaintiff."

And the court gave that with a qualification, in this language:

"If it should appear from the evidence that it was not necessary for the plaintiff in carrying out the orders he claims to have received from Grimm, to get upon the elevator, and that it was not his custom or that of other employes to get upon the elevator while hoisting goods thereon, no negligence is to be attributed to Grimm in moving the elevator from the second to the third floor notwithstanding the orders which he had previously given to the plaintiff."

Everybody seemed to recognize that it was a matter of some importance whether this rule, this notice, was habitually violated. The plaintiff offered to show that it was. The court refused to let him show it. That was error.

Complaint is made by the plaintiff that the court should have given some requests made by the plaintiff, which the court failed to give; one of them is numbered six. The court declined to give this. It is said it is error. The request is:

"6. If the jury find that plaintiff was guilty of contributory negligence, I charge you that such contributory negligence will not defeat his action, if the evidence in the case is such as to lead you to believe that the defendant by the exercise of reasonable care and prudence might have avoided the consequences of the injured party's negligence, in this case the plaintiff's negligence."

That is to say, that if the jury should find that the defendant could have avoided injuring the plaintiff, then, though the plaintiff was negligent, still he might recover. That was what the court was asked to charge. It is claimed it was error because it was not charged.

There was no error in this refusal. Courts have not gone so far. So far as I know, no court has gone farther than this court in L. S. & M. S. R. R. Co. v. Schade, Admr., 8 Circ. Dec., 316. In that case this court said that if after the defendant knew or by the exercise of reasonable care would have known of the dangerous position in which the plaintiff had placed himself, and could by the exercise of proper care, after having ascertained the dangerous position in which the plaintiff was put, have prevented the injury, the plaintiff might still recover.

The Supreme Court of our state, in Schweinfurth, Admr., v. C. C. C. & St. L. Ry. Co., 60 Ohio St., 215, [54 N. E. Rep. 89], have used as strong language as anywhere excepting in the Schade case they may have gone farther. In this case last mentioned, they say that the defendant, after he knew of the danger in which the plaintiff had placed himself, if it could have saved him, it was bound to do it. That is the substance of it. I will not stop to read from it.

We think there was no error in refusing to so charge.

One of the requests made by the defendant below and which was given by the court, the second of the requests made by the defendant below is in these words:

"2. If the plaintiff went to this elevator opening in the dark, intending to step upon the platform, it was his duty, before attempting to get on to the platform, to use ordinary care to ascertain whether the elevator platform was where he supposed it to be, and if, under such circumstances, he failed to use ordinary care, and such failure contributed to his injury, he cannot recover."

That was given. We think it ought not to have been given without a qualification. The authorities, we understand, are all to that effect; and, bearing upon that, is Buchanan Bridge Co. v. Campbell, in 60 Ohio St., 406, 425 [54 N. E. Rep. 372]. That should have been qualified to the extent that the contributory negligence must have been the proximate cause of the injury. And the jury must have understood the court to mean by that something more than the proximate cause, because immediately following this, followed the third request by the defendant, which the court gave:

"3. If the plaintiff's own negligence in any degree proximately contributed to his injury, he cannot recover."

We think that is the law. But immediately after, and as a distinct charge from that, the court said:

" If you find the defendant was so negligent, then you will proceed further and inquire and determine whether or not this negligence so found by you was the proximate cause of the injury to the plaintiff of which he complains, and if you find it was not such cause, you need not inquire further but return your verdict for the defendant; but if you find it was such cause, then you will proceed to inquire and determine whether or not the plaintiff himself was negligent, and if you find he was negligent and that his negligence contributed to cause or produce his injuries, the defendant would be entitled to your verdict; " and in that case the plaintiff cannot recover.

There is also the same proposition in the general charge.

It was clearly erroneous this giving the second request.

The plaintiff asked the court to submit certain questions to the jury for special finding under Sec. 4201, Rev. Stat., as amended in 91 O. L., 298. Without stopping to read, I will say that it provides that the court shall submit questions to the jury. The court submitted one of the questions which the plaintiff asked to be submitted; the second and third questions the court did not submit. There was no error in refusing to submit the second and we find it so under the case of Schweinfurth, Admr., v. Railway Co., *supra*.

As to the third, it might as well have been asked if this accident could have occurred if the laws of gravitation had been suspended. The question was: " If the elevator had been left at rest, could the accident have happened? " That is to say, if something had been there so strong as to stop him from falling, could he have gone down.

The case is reversed and remanded to the **court of common pleas for the errors pointed out, and for no other.**